In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00082-CR**

_____

**EX PARTE AMIR TAVAKKOLI**

_____

**On Appeal from the County Court at Law No. 1**
**Montgomery County, Texas**
**Trial Cause No. 12-26808**
_____

**MEMORANDUM OPINION**

This is an appeal from the trial court's denial of an application for writ of

habeas corpus in which Amir Tavakkoli, a legal resident alien, alleged that trial

counsel was ineffective for failing to properly advise him of the immigration

consequences of his guilty plea. *See* Tex. Code Crim. Proc. Ann. art. 11.09 (West

2005). We affirm the trial court's order denying Tavakkoli's application for writ

of habeas corpus.

I.       BACKGROUND

Appellant, Amir Tavakkoli, was born in Iran on July 10, 1988. He moved

to the United States in 2002 and became a legal permanent resident. On December

8, 2006, Tavakkoli was arrested for reckless driving. After he was placed in custody, the arresting officer conducted an inventory of the car and found drug paraphernalia and marijuana. Tavakkoli was charged with reckless driving and possession of marijuana. At the time of his arrest, he was an eighteen-year-old college student. On December 11, 2006, Tavakkoli was appointed legal counsel. On December 15, 2006, appointed counsel met with Tavakkoli during the jail docket. On the same day, Tavakkoli pled guilty to possession of marijuana in exchange for a twenty-day jail sentence and dismissal of the reckless driving charge. After serving his twenty-day sentence, he was released.

In July 2012, Tavakkoli left the United States to attend a family wedding in Sweden. Upon his return to the United States, he was denied reentry because of his 2006 guilty plea to possession of marijuana. In January 2013, Tavakkoli filed an application for writ of habeas corpus under article 11.09 of the Texas Code of Criminal Procedure alleging that his trial counsel rendered ineffective assistance of counsel by failing to advise him of the immigration consequences of pleading guilty to the drug possession charge in 2006. At the time of the filing of his application for habeas relief, Tavakkoli was a second-year law student working at the Texas House of Representatives as a Texas Legislature Intern. After a hearing,

the trial court denied Tavakkoli's application for writ of habeas corpus and filed findings of fact and conclusions of law. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision to grant or deny relief on a writ of habeas corpus is reviewed under an abuse of discretion standard. *Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.—Beaumont 2008, pet. ref'd). In reviewing the trial court's decision, we review the facts in the light most favorable to the trial court's ruling and afford almost total deference to the trial court's determination of historical facts supported by the record, especially when the trial court's findings of fact are based on an evaluation of credibility and demeanor. *Id.* We apply this deferential standard of review regardless of whether the trial court's findings are explicit or implied, or based on affidavits or live testimony. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When the resolution of the raised issue turns on an application of legal standards, we review the trial court's determination de novo. *Id.* To obtain habeas relief an applicant must prove his allegations by a preponderance of the evidence. *Id.*

## III. ANALYSIS

In his application for habeas corpus, Tavakkoli alleged that his appointed counsel failed to advise him of the immigration consequences prior to him entering

3

a guilty plea. Tavakkoli's affidavit was attached to his application for habeas relief. In his affidavit, Tavakkoli asserted that while in the Montgomery County Jail following his arrest, he learned that he could not be released on bond because of an immigration hold. Tavakkoli stated that when he met with his trial counsel during the jail docket, he informed counsel that he was not able to bond out because of an immigration hold even though he was a legal permanent resident. Tavakkoli testified that he had college final exams coming up, and he was nervous he would not be able to take them. According to Tavakkoli, counsel stated, "'as long as you are here legally don't worry about it.'" In addition, Tavakkoli stated that counsel did not advise him in any way that he "would be deported, removed, or inadmissible to the United States upon reentry if [he] plead guilty to possession of marijuana." Tavakkoli alleged that counsel told him he could "'get out of jail today or tomorrow' in exchange for a plea of guilty to the possession of marijuana charge; and further that the reckless driving charge would be dismissed.'" According to Tavakkoli, no other consequences were disclosed. In his application for writ of habeas corpus, Tavakkoli argued that under *Padilla v. Kentucky*, his attorney provided ineffective assistance of counsel. *See* 559 U.S. 356 (2010).

On appeal, Tavakkoli argues that his guilty plea was involuntary and unknowing, and that counsel was ineffective for failing to advise him of the

4

potential immigration consequences of his plea, by giving him affirmative misadvice, and by encouraging him to plead guilty though plausible defenses could have been pursued.[1]

## A. Ineffective Assistance under *Padilla*

The Sixth Amendment to the United States Constitution guarantees a defendant effective assistance of counsel in a plea hearing. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). In *Padilla*, the United States Supreme Court held that the Sixth Amendment requires that the defense attorney for a criminal defendant provide advice about the risk of deportation that arises from a guilty plea. 559 U.S. at 374. Recognizing that immigration law is complex, the Supreme Court stated that "[w]hen the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. at 369. But when the deportation consequence is clear, defense counsel has a duty to give correct advice regarding the deportation consequences of defendant's plea. *Id*. "[T]o obtain relief on this type of claim, a petitioner must

---

[1] Tavakkoli also argues on appeal that his Fifth and Sixth Amendment rights were violated because counsel failed to conduct a thorough investigation, failed to subject the prosecution's case to meaningful adversarial testing, and failed to pursue other viable plea options for a better outcome. Tavakkoli did not raise these arguments in the trial court. We decline to address these arguments on appeal. *See* Tex. R. App. P. 33.1; *see also* Tex. R. App. P. 47.1.

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id*. at 372.

In *Chaidez v. United States*, the Supreme Court held that *Padilla* is not applied retroactively. 133 S. Ct. 1103, 1113 (2013). "[D]efendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id*. The Court issued its decision in *Padilla* on March 31, 2010. *See Padilla*, 559 U.S. 356. Tavakkoli's conviction became final on December 15, 2006. *See* Tex. R. App. P. 21.4; *Jones v. State*, 77 S.W.3d 819, 820 (Tex. Crim. App. 2002) (holding that when there is no evidence that a defendant ever filed a notice of appeal, a conviction is deemed final on the date of sentencing). Therefore, the holding of *Padilla* is not applicable to Tavakkoli's case. *See Chaidez*, 133 S. Ct. at 1113.

On appeal, Tavakkoli argues that the trial court erred in applying the holding of *Chaidez* to the present case because *Chaidez* does not apply to habeas proceedings. Tavakkoli urges this Court to apply *Padilla* retroactively to state habeas cases on collateral review. In *Ex parte De Los Reyes*, petitioner filed a writ of habeas corpus relying on *Padilla* and alleging he received ineffective assistance of counsel because his trial counsel failed to advise him of the deportation consequences of his guilty plea. 392 S.W.3d 675, 676 (Tex. Crim. App. 2013).

6

The Texas Court of Criminal Appeals concluded, under the United States Supreme Court's analysis in *Teague v. Lane*, "because *Padilla* imposed a 'new rule' of constitutional criminal procedure, . . . a defendant whose conviction was already final at the time that *Padilla* was handed down may not benefit from that decision in a habeas or similar proceeding." *Id*. at 679 (citing *Teague v. Lane*, 489 U.S. 288, 301 (1989)). The Court recognized that it "could accord retroactive effect to *Padilla* as a matter of state habeas law." *Id*. (citing *Danforth v. Minnesota*, 552 U.S. 264 (2008) (holding that *Teague* does not constrain "the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion")). But, it expressly declined to do so. *Id.* The court stated, "[w]e adhere to the retroactivity analysis in *Chaidez* and its holding that *Padilla* does not apply retroactively." *Id*. Because *Padilla* does not apply retroactively, we will not apply *Padilla* in analyzing Tavakkoli's claim that he received ineffective assistance of counsel. *See id*.; *see also Chaidez*, 133 S. Ct. at 1113.

## B. Ineffective Assistance under Pre-*Padilla* Law

To be valid, a guilty plea must be entered voluntarily, knowingly, and intelligently. *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *Klem*, 269 S.W.3d at 718. An involuntary plea violates a defendant's Fifth Amendment right to due process. U.S. Const. amends. V, XIV; *Burke v. State*, 80 S.W.3d 82,

7

93 (Tex. App.—Fort Worth 2002, no pet.). A plea is not voluntarily and knowingly entered if it is made as the result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). To prevail on a claim that a plea was involuntary because it was entered upon ineffective advice of counsel a defendant must show (1) counsel's advice was not within the wide range of competence required of criminal defense attorneys, and (2) there is a reasonable probability that, but for counsel's errors, the defendant would have pleaded "not guilty" and insisted on a trial. *Id.* (citing *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)). "There is a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Id.* To obtain relief, counsel's ineffective assistance "must be firmly founded in the record[.]" *Id.*

"Affirmative misadvice by counsel regarding a material issue that the plea hearing reflects was key to the defendant's plea decision may constitute deficient performance." *Ex parte Arjona*, 402 S.W.3d 312, 318 (Tex. App.—Beaumont 2013, no pet.). In *Arjona*, we recognized that even when counsel has no initial duty to advise a defendant of the immigration consequences of his guilty plea because of the non-retroactive effect of *Padilla*, when counsel gives advice regarding the immigration consequences of the plea, he becomes obligated to

8

provide the defendant with accurate information. *Id.* Without such a rule, counsel would be free to mislead a defendant merely because there was no initial duty. *Id.*

The only evidence presented by Tavakkoli regarding counsel's alleged ineffective assistance was Tavakkoli's testimony and affidavit.[2] Tavakkoli alleged in his affidavit that counsel made the following affirmative representations:

> **I informed [counsel] that I was not able to bond out because of an immigration hold**. He asked me if I was here legally. **I told [counsel] that I was not a United States citizen, but I was here legally as a permanent resident with a resident alien/green card**. . . . **He stated, 'as long as you are here legally don't worry about it.'**
>
>     . . . .
>
> [Counsel] then stated 'All you have to do is plead guilty to possession of marijuana and the reckless driving charge will be dismissed;' and he also said 'you will get out today or tomorrow.' I thought that was odd so I informed him immediately that I did not have or possess any marijuana. [Counsel] said 'What do you want to do? You can take it to trial, but it may take a long time, they will probably take the police officer's word over yours and you will be in jail for some time pending trial.' I then said, 'I just want to get out, I have class.' [Counsel] responded by stating[,] 'Just plead guilty, it's not a big deal. You will get out tonight or tomorrow night.' No other options were discussed.

Tavakkoli's testimony at the hearing comported with the allegations set forth in his affidavit.

---

[2] Tavakkoli's immigration attorney also testified at the habeas hearing regarding Tavakkoli's immigration case and the immigration consequences of his guilty plea.

At the habeas hearing, Tavakkoli's trial counsel testified that he had no independent recollection of representing Tavakkoli. Counsel stated that he has many Hispanic clients, both legal and illegal, and he is familiar with the immigration consequences for both in controlled substance cases. He stated that if a client charged with only a misdemeanor was still in jail at the time of the jail docket call, he would inquire of the client as to why he was still in jail as bond is usually set very low for misdemeanor charges. In this case, Tavakkoli was unable to bond out of jail due to an immigration hold. Tavakkoli was concerned with getting out of jail because of his impending college semester final exams. Counsel testified that when a client has an immigration hold, while they are still entitled to bond, once the client bonds out, immigration officials normally transport them to an immigration center. Counsel was adamant that he would never tell a client under the circumstances alleged in this case, "don't worry about it."

Counsel testified, based on his review of the allegations in the offense report, he saw no valid defenses to the charged offenses. He explained that probable cause for the stop existed, Tavakkoli was arrested, and an inventory search was conducted during which the police found "a pipe with some debris in it and . . . a baggy with marijuana[,]" according to the police report. Counsel explained that he would have advised Tavakkoli that the prosecutor would have to

bring the marijuana to court, they could have it tested, and the jury could look at it and decide if it was a usable amount of marijuana. Counsel disputed Tavakkoli's assertion that counsel failed to pursue plausible defenses, stating that if Tavakkoli had stated it was not his marijuana, they would have explored that defense. Counsel further explained that if Tavakkoli had told him the baggie only contained "'stems and seeds[,]'" he would have encouraged him to "fight " the possession charge because "you have to have a usable amount of marijuana" to be convicted of possession of marijuana.

Regarding an assertion by Tavakkoli in his affidavit that at the time of the plea he did not understand English well, counsel testified that he would not have represented someone who was unable to understand him, that Tavakkoli would have been entitled to an interpreter if he did not understand English, and that notably, at the time of the plea hearing Tavakkoli was a college student. Though he did not recall the details related to Tavakkoli's case,[3] counsel testified it is the practice of the court to have the parties stand before the court, and for the court to ask the defendant "'Did you read the admonishments and fully understand them and did you have them explained to you by an attorney'" inserting the attorney's

---

[3] We note that in this case we are without the benefit of a transcript of the plea hearing. *Compare Arjona*, 402 S.W.3d at 318 (A plea hearing may show relevant circumstances surrounding the entering of the plea).

specific name into the sentence. Counsel characterized several of Tavakkoli's allegations as "blatant lie[s]." Regarding Tavakkoli's allegation that counsel told him, "'Just plead guilty. It's not a big deal'" counsel testified, "I wouldn't do that. No way." When asked if he could have totally failed to discuss immigration consequences of the plea with Tavakkoli counsel responded, "[a]bsolutely not. And especially given the fact that he was a legal resident." Counsel testified as follows:

> When you go through the admonishments, they are set up fairly early in the admonishments. And the judge – all the county court judges – all the judges in Montgomery County and have for years and years and years asked, "Are you a citizen[?]" And if they say no, they dwell on that and they make sure that they understand it clearly before they accept their plea. And when I go through it, especially when I have a young legal resident, I explain it very, very thoroughly, tell them that they do have a bond and then also that a drug charge can trip them up.

The written admonishments signed by Tavakkoli appear in the record before us and state: "I understand . . . that if I am not a citizen of the United States, my plea of guilty or nolo contendere may result in my deportation, exclusion from admission to this country, or denial of naturalization under federal laws[.]"

Counsel further testified Tavakkoli's assertion that counsel told him "'[y]ou will get out today or tomorrow[]'" was a "blatant lie." Counsel explained, "if somebody has an immigration hold on them, they are not going to get out until immigration deals with them." Counsel stated, "[t]ypically what I tell them when

12

they're --- when they're here and there's an immigration hold on them is if they plead guilty after they serve their time in jail, if that's the offer that they took, then immigration is going to transfer them from jail to the immigration proceeding." Counsel testified that if his client is a legal resident and facing a drug charge, theft charge, or felony charge and has an immigration hold on him, he advises them to get advice from an immigration attorney. Counsel was adamant that with regard to his clients who have an immigration hold on them, he explains that if they plead guilty and serve time, once they finish their sentence, they will be transferred to the immigration facility.

Counsel disputed Tavakkoli's statement that he did not inform Tavakkoli of his rights and the consequences of pleading guilty. Counsel maintained that he would have advised Tavakkoli, and any similarly situated clients, that they were entitled to a bond both at the jail and the immigration center. Counsel reiterated that the admonishments explain the immigration consequences of pleading guilty and that he reviews those with clients:

> I go through the admonishments and admonishments that he signed and I dwell on them. And one of the things that I dwell on is, look, a possession of marijuana charge counts just like a cocaine charge for immigration purposes . . . I say, look, as it stands right now they're going to want to deport you for a drug charge. It could be that you could hire an attorney and they may be able to straighten it out but you're going to need to consult with an immigration attorney about that.

13

Counsel testified, "I told [Tavakkoli] what was going to happen if he . . . pled guilty. I mean, because it's a conversation that takes place with everybody that has an immigration hold on them." Counsel further testified that he represents many Mexican Nationals who do not have immigration holds on them and it is his practice to advise his non-citizen clients that if they plead guilty, they cannot return to their home country because if they leave the United States and try to come back "you're not coming back in." When asked if he would have had a conversation with Tavakkoli about the difference between removability and admissibility after voluntarily leaving the country, counsel stated, "[a]bsolutely."

Counsel maintained throughout his testimony that he did not make the affirmative representations set forth in Tavakkoli's affidavit, and that he advises all of his non-citizen clients of the deportation and admissibility consequences of pleading guilty. Counsel also stated that he would not have discouraged Tavakkoli from going to trial, would not have told him trial would take a long time, and that he is not afraid to try a case in which it is his client's word against an officer's. Counsel explained that he has tried "many cases" for non-citizen clients, the bulk of his trials have involved illegal immigrants, that he would not tell them a jury was going to believe the police officer over them, and that during such trials he attacks the credibility of the testifying officer.

In reviewing the trial court's decision to grant or deny Tavakkoli's application for habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and defer to the trial court's implied factual findings that are supported by the record. *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006). We will uphold the trial court's ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We afford almost total deference to the trial court's determination of historical facts that are supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id*.

Tavakkoli alleges that trial counsel failed to advise him regarding immigration consequences, told him "not to worry about" the immigration hold that was purportedly placed on him while in jail, advised him to plead guilty to possession of marijuana because it would be his word against the police officer's, and failed to evaluate and pursue plausible defenses. As the fact finder, the trial court was entitled to disbelieve Tavakkoli's testimony, even though it was supported by his affidavit. *See Wheeler*, 203 S.W.3d at 325-26. Likewise, it was within the trial court's discretion to believe trial counsel's testimony that he would have properly advised Tavakkoli regarding his right to bond out, any relevant

15

defenses, and the deportation and inadmissibility consequences of pleading guilty. *See Ulloa*, 370 S.W.3d at 771-72 (Even where trial counsel could not recall his specific conversation with defendant, the trial judge was entitled to believe trial counsel's testimony that it was his policy to give special attention to informing clients that successful completion of sex-offender counseling typically requires an admission of guilt and that he would not have told defendant that a "no contest" plea was the same as a "not guilty" plea.).

We cannot hold that the trial court abused its discretion in finding that Tavakkoli failed to prove by a preponderance of the evidence that counsel rendered ineffective assistance. Tavakkoli has not met his burden of showing that his state or federal constitutional rights were violated. We overrule Tavakkoli's appellate issues. On the record before us we will not disturb the trial court's ruling. We affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 11, 2013
Opinion Delivered September 25, 2013
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.

16